UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
Martin Cudjoe, *individually and on behalf of all persons similarly situated*,

                  Plaintiff,                  **MEMORANDUM & ORDER**
                                                  21-CV-05084 (DG) (ST)

      -against-

Building Industry Electrical Contractors Association, *et al.*,

                  Defendants.
----------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

      On September 13, 2021, Plaintiff Martin Cudjoe ("Plaintiff") filed the Complaint in this action, "individually and on behalf of all persons similarly situated," against Defendant Building Industry Electrical Contractors Association and Defendant United Electrical Contractors Association, a/k/a "United Construction Contractors Association" (together, the "Association Defendants"); Defendant The International Union of Journeymen & Allied Trades, a/k/a "IUJAT," and Defendant United Service Workers, Local Union No. 363, a/k/a "United Electrical Workers of America, IUJAT, Local 363" (together, the "Union Defendants"); Defendants Electrician's Retirement Fund, Building Trades Annuity Benefit Fund, Building Trades Welfare Benefit Fund, and Building Trades Educational Benefit Fund (collectively, the "Benefit Funds"); and Defendants Frank Rappo, *a fiduciary*, and Eric Olynik, *a fiduciary* (together, the "Trustees" and with the Benefit Funds, the "Fund Defendants"). *See generally* Complaint ("Compl."), ECF No. 1; *see also* Compl. ¶¶ 4-13. Plaintiff alleges violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and the Labor Management Relations Act of 1947 ("Taft-Hartley"), 29 U.S.C. § 141, *et seq.*, and breaches of the Union Defendants' duty of fair representation to its members under the National Labor Relations Act,

29 U.S.C. § 151, *et seq*. *See generally* Compl.

Plaintiff's Complaint is brought in six Counts: Count I seeks injunctive relief against all Defendants pursuant to Taft-Hartley; Count II seeks monetary relief against the Trustees, the Association Defendants, and the Union Defendants pursuant to ERISA for breaches of duties of prudence and loyalty and co-fiduciary breaches; Count III seeks monetary relief against the Trustees, the Association Defendants, and the Union Defendants pursuant to ERISA for prohibited transactions; Count IV seeks injunctive relief against all Defendants pursuant to ERISA; Count V seeks monetary relief against the Union Defendants for breach of duty of fair representation; and Count VI seeks injunctive relief against the Union Defendants for breach of duty of fair representation. *See* Compl. ¶¶ 81-127.[1] The Court hereinafter refers to Counts II, III, and IV as the "ERISA claims" and Counts V and VI as the "DFR claims."

This action is premised on Plaintiff's claims that the Benefit Funds "were established and have continued to operate solely with employer-side trustees appointed by an employer organization and without any trustees appointed by the Union" and that "[t]his plainly illegal fund structure" has resulted in "the trustees paying themselves approximately $1 Million in

---

[1] Plaintiff seeks, *inter alia*, a declaration that the Benefit Funds have been established and operated in violation of Taft-Hartley; an order reforming and amending the Benefit Funds' Trust Agreements and other plan documents to require equal board representation by "the Association and the Union;" an order removing the Trustees from their positions as trustees and fiduciaries of the Benefit Funds and forever barring them from serving in any such capacity in the future with respect to any ERISA plan; an order directing "Defendants Association and Union" to appoint new trustees to the Benefit Funds and to thereafter adequately monitor all plan trustees; appointment of neutral trustee(s) to serve on the boards of the Benefit Funds; and payment of all compensation paid to the Trustees, and any compensation paid by the Benefit Funds to any Association-member employer, plus any profits made by the Trustees or profits which would have been earned by the Benefit Funds, and interest, to be paid to the Benefit Funds, jointly and severally at the expense of "Defendants Trustees, Association and Union." *See* Compl. at 40-41; *see also* Compl. ¶¶ 89, 97, 105, 114, 119, 127.

2

compensation since 2013 as well as paying Apprenticeship Fund assets to participating employers." *See* Compl. at 2-3.

Plaintiff seeks to bring the ERISA claims and DFR claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and a "Class" defined as "[a]ll individuals who were participants in the [Benefit Funds] from March 1, 2013 through present," as well as various subclasses. *See* Compl. ¶¶ 15, 16; *see also* Compl. at 40. The Complaint notes that, "[a]lthough styled as a Class Action Complaint, where applicable, Plaintiff alternately seeks to bring this case in a non-class capacity on behalf of the Benefit Funds." *See* Compl. ¶ 15 n.4.

Pending before the Court are the Fund Defendants' motion to dismiss Plaintiff's Complaint, *see* Fund Defendants' Notice of Motion to Dismiss, ECF No. 54; Fund Defendants' Memorandum of Law in Support ("Fund Br."), ECF No. 54-1; Fund Defendants' Reply in Support ("Fund Reply"), ECF No. 56, and the Union Defendants' motion to dismiss Plaintiff's Complaint, *see* Union Defendants' Notice of Motion to Dismiss, ECF No. 57; Union Defendants' Memorandum of Law in Support ("Union Br."), ECF No. 57-1; Union Defendants' Reply Memorandum of Law in Further Support ("Union Reply"), ECF No. 59.[2] Plaintiff opposes both motions. *See* Plaintiff's Memorandum of Law in Opposition to Fund Defendants' Motion to Dismiss ("Pl. Fund Opp."), ECF No. 55; Plaintiff's Memorandum of Law in Opposition to Union Defendants' Motion to Dismiss, ECF No. 58.[3]

---

[2] The Union Defendants submitted various declarations and exhibits in connection with their briefing. *See* ECF Nos. 57-2 to 57-9, 59-1 to 59-6. The Court need not, and does not, consider these documents.

[3] The Association Defendants have not filed a motion to dismiss the Complaint or otherwise responded to the Complaint. *See generally* docket. During oral argument on the instant motions, the Association Defendants represented, with respect to the claims against the

3

For the reasons set forth below, because Plaintiff has failed to establish Article III standing, the Court lacks subject matter jurisdiction over this action and the Complaint therefore must be dismissed.

## BACKGROUND

**I.  Factual Background**

As alleged in the Complaint, Plaintiff is an individual currently residing in Lawrenceville, Georgia.  *See* Compl. ¶ 3.  Plaintiff alleges that he "is and was a participant in the [Benefit Funds] and was represented by the Union and/or its constituent entities and/or predecessors since approximately 1990, in that he worked for electrical contractor employers which were signatory to [collective bargaining agreements] with the Union from approximately 1990 to 2004 and 2008 to 2019."  *See* Compl. ¶ 3.[4]

With respect to the structure of the Benefit Funds, Plaintiff alleges that the Benefit Funds are all "multiemployer plan[s]" and "employee benefit plan[s]" within the meaning of 29 U.S.C. § 1002(37) and (3), respectively.  *See* Compl. ¶¶ 8-11.  Plaintiff further alleges that Defendant Electrician's Retirement Fund (the "Pension Fund") and Defendant Building Trades Annuity Benefit Fund (the "Annuity Fund") are "employee pension benefit plan[s]" within the meaning of 29 U.S.C. § 1002(2) and that Defendant Building Trades Welfare Benefit Fund (the "Welfare Fund") and Defendant Building Trades Educational Benefit Fund (the "Apprenticeship Fund")

---

Association Defendants, that they joined in the arguments made by the Union Defendants and Fund Defendants.  *See* Transcript of July 25, 2023 Oral Argument ("Tr.") at 28, ECF No. 65; *see also* ECF No. 40 at 2.

[4]  In the Complaint, Plaintiff uses the term "the Union" to refer to Defendant United Service Workers, Local Union No. 363 and the term "the Association" to refer to the Association Defendants.  *See* Compl. at 2, 3 n.2.  The Court adopts Plaintiff's terminology in connection with setting forth the factual background.

4

are "employee welfare benefit plan[s]" within the meaning of 29 U.S.C. § 1002(1). *See* Compl. ¶¶ 8-11. Plaintiff further alleges that attachments to the Annuity Fund's Form 5500 for the years ended December 31, 2019 and 2018 state that the Annuity Fund is a multiemployer defined contribution profit sharing plan. *See* Compl. ¶ 44.

With respect to the administration of the Benefit Funds, Plaintiff alleges, *inter alia*, that the Benefit Funds are ERISA "multiemployer plans," which are required by Taft-Hartley and ERISA to be jointly administered by union and management trustees; that, despite this "clear legal mandate," the Benefit Funds "were established and continue to operate with only management-side trustees appointed by the Defendant Association;" that the Trustees were both appointed by, and act in the interest of, the Association; and that the Union has failed or refused to appoint union trustees to its members' employee benefit funds and to bargain for authority, under the terms of its collective bargaining agreement with the Association or the Benefit Funds' trust agreements, to appoint union trustees to the boards of the Benefit Funds. *See, e.g.*, Compl. ¶¶ 47 (citing 29 U.S.C. §§ 186(c)(5), 1102(a)), 49, 52, 55.

With respect to the alleged misuse of the Benefit Funds' assets, Plaintiff alleges, *inter alia*, that the Trustees amended the Benefit Funds' trust agreements in order to allow for themselves to be paid out of plan assets for performance of their duties as trustees, retroactive to March 1, 2013; that, pursuant to these amendments, the Trustees selected themselves as "service providers" to the Benefit Funds; that "it appears that the total compensation paid to [the Trustees] from 2014 through present exceeds $1 Million;" that, upon information and belief, discovery will show that the Trustees did not perform compensable services for the Benefit Funds with a fair market value anywhere near the level of compensation they received; that, "[h]ad the $1 Million in prohibited Trustee compensation, as well as any amounts illegally paid

5

by the Apprenticeship Fund to participating employers, instead been properly invested, the Benefit Funds would have earned millions more;" and that the Apprenticeship Fund appears to have paid plan assets to Association-member employers to assist them in applying for and creating their own individual apprenticeship programs. *See, e.g.*, Compl. ¶¶ 58, 60-62, 67.

Moreover, Plaintiff alleges that "[h]ad the Benefit Funds not lost money due to the Trustee, Union, and Association breaches, assuming the same level of employer compensation (and subject to prevailing wage requirements on public works), Union members and Class Members would have received either greater cash wages and/or richer benefits." *See* Compl. ¶ 68.

## II.  Procedural Background

On September 13, 2021, Plaintiff filed the Complaint in this action. *See* Compl.

On November 10, 2021, the Fund Defendants and the Union Defendants each filed a letter motion seeking a pre-motion conference in anticipation of filing a motion to dismiss. *See* ECF Nos. 36, 37. On November 17, 2021, Plaintiff filed letters in response to the November 10, 2021 letter motions. *See* ECF Nos. 38, 39. On December 3, 2021, the Association Defendants filed a letter motion seeking a pre-motion conference in anticipation of filing a motion to dismiss, noting, *inter alia*, that the Association Defendants "join in the filings of both other defendants." *See* ECF No. 40. By Orders dated June 9, 2022, United States District Judge Joan M. Azrack denied the Fund Defendants' letter motion for a pre-motion conference, waived the pre-motion conference, ordered the parties to submit a joint proposed briefing schedule, and terminated the Union Defendants' letter motion for a pre-motion conference and the Association Defendants' letter motion for a pre-motion conference. *See* June 9, 2022 Orders. By Order dated July 12, 2022, Judge Azrack, *inter alia*, directed Plaintiff to file an amended complaint, if any, on or before July 26, 2022. *See* July 12, 2022 Order. Plaintiff did not file an amended

6

complaint by July 26, 2022 or thereafter.  *See generally* docket.

On January 5, 2023, this action was reassigned to the undersigned.  *See* ECF No. 52.  On January 11, 2023, the Fund Defendants filed their motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* ECF No. 54; *see also* ECF Nos. 54-1, 56.  On January 12, 2023, the Union Defendants filed their motion to dismiss, which appears to be brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* ECF Nos. 57, 57-1; *see also* ECF No. 59.  Plaintiff opposed both motions to dismiss.  *See* ECF Nos. 55, 58.

By Order dated June 12, 2023, in light of the alleged pleading defects identified in the motions to dismiss, the Court directed Plaintiff to file a letter indicating whether Plaintiff sought leave to amend and, if so, to set forth with specificity the nature of any contemplated amendment.  *See* June 12, 2023 Order.  On June 20, 2023, Plaintiff filed a letter stating that "Plaintiff does not at this time seek leave to amend."  *See* ECF No. 61.

On July 25, 2023, oral argument was held on the instant motions.  *See* ECF No. 64; *see also* Tr.  During oral argument, Plaintiff responded to questions from the Court regarding, *inter alia*, Plaintiff's standing to bring the claims asserted in the Complaint.  *See* Tr. at 7-11, 32-33.  Plaintiff stated during the argument that Plaintiff did not believe amendment was needed and that Plaintiff did not believe there was a reason to amend.  *See* Tr. at 14, 37-38.  The Association Defendants represented, with respect to the claims against the Association Defendants, that they joined in the arguments made by the Union Defendants and Fund Defendants at oral argument.  *See* Tr. at 28.

## STANDARD OF REVIEW

When a court is faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the court "must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and,

7

therefore, an exercise of jurisdiction." *Pressley v. City of N.Y.*, No. 11-CV-03234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013) (quotation omitted); *see also United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993). Moreover, federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)); *see also* Fed. R. Civ. P. 12(h)(3).

## DISCUSSION

For the reasons set forth below, Plaintiff has failed to establish Article III standing and the Complaint therefore must be dismissed in its entirety.

**I.     Applicable Law**

Article III, Section 2 of the United States Constitution limits the jurisdiction of the federal courts to the resolution of cases and controversies. U.S. Const. art. III, § 2. In order to bring suit, a plaintiff must establish standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (noting that the party invoking federal jurisdiction bears the burden of establishing standing). If a plaintiff lacks Article III standing, a court has no subject matter jurisdiction to hear plaintiff's claims. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.* ("*Central*"), 433 F.3d 181, 198 (2d Cir. 2005). Because the standing issue goes to a court's subject matter jurisdiction, it is an issue that can be raised *sua sponte*. *See id.*; *see also Berger v. L.L. Bean, Inc.*, 351 F. Supp. 3d 256, 261 (E.D.N.Y. 2018) (noting that "federal courts have a continuing and independent duty to ensure that they possess subject matter jurisdiction, and must dismiss a case when they find subject matter jurisdiction lacking"); *Cohan v. Movtady*, 751 F. Supp. 2d 436, 440-41 (E.D.N.Y. 2010) (dismissing *sua sponte* certain claims for lack of standing, even where parties did not brief relevant standing

8

issues).

To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560-61); *see also Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Although courts "generally accept the truth of a plaintiff's allegations at the motion to dismiss stage, the plaintiff still 'bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (alteration accepted) (quotation omitted);[5] *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d. Cir. 2011).

"To demonstrate injury in fact, a plaintiff must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." *Maddox*, 19 F.4th at 62 (quotation omitted). An injury is concrete if it is "real, and not abstract," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (quotation

---

[5] The United States Court of Appeals for the Second Circuit has noted that its "caselaw exhibits some tension regarding the requisite pleading standard for purposes of standing." *See Plutzer ex rel. Tharanco Grp., Inc. v. Bankers Tr. Co. of S. Dakota*, No. 22-561-CV, 2022 WL 17086483, at *2 (2d Cir. Nov. 21, 2022) (comparing the standard articulated in *Calcano* with that articulated in *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110-11 (2d Cir. 2018), an "arguably lower standard"). The tension noted does not affect the Court's analysis herein because under either standard, Plaintiff has failed to demonstrate standing, for the reasons set forth below.

omitted), and it is particularized if it "affect[s] the plaintiff in a personal and individual way," *id*. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).  Certain tangible harms – such as physical and monetary harms – will "readily qualify as concrete injuries under Article III." *See TransUnion*, 594 U.S. at 425 (referencing *Spokeo*).

In determining whether a harm is sufficiently concrete to qualify as an injury in fact, "Congress's views may be 'instructive.'"  *See TransUnion*, 594 U.S. at 425 (quoting *Spokeo*, 578 U.S. at 341).  However, "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III," and "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation" may bring suit over that violation in federal court.  *See TransUnion*, 594 U.S. at 426-27 (emphasis in original).  For example, "[s]tanding under ERISA requires a plaintiff to establish a constitutionally sufficient injury arising from the breach of a statutorily imposed duty and identify a statutory endorsement of the action."  *See Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*, No. 18-CV-06749, 2020 WL 5994957, at *2 (E.D.N.Y. Oct. 9, 2020) (quotations omitted), *aff'd*, 858 Fed. App'x 432 (2d Cir. 2021).[6]

"[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 594 U.S. at 431.  The Second Circuit has noted that "determining standing is an inherently fact-specific inquiry that requires careful judicial

---

[6] Defendants do not appear to challenge whether Plaintiff has a statutory right to bring the claims asserted in the Complaint, but, in any event, "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).

10

examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *See McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 302 (2d Cir. 2021) (quotation omitted).

Moreover, "in order to claim 'the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving' them 'a sufficiently concrete interest in the outcome of the issue in dispute.'" *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013)); *see also Warth v. Seldin*, 422 U.S. 490, 502 (1975) (noting that named class members "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"). "The Supreme Court has held that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class.'" *Central*, 433 F.3d at 199 (alteration accepted) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

## II.  Plaintiff Has Failed to Establish Article III Standing

Here, Plaintiff has failed to establish a concrete injury sufficient to confer Article III standing with respect to any of his claims.

Plaintiff argues that "in the publicly-funded construction context such as here, employers are required to pay a prevailing wage/benefit package to their employees, but . . . are heavily incentivized to pay no more than that," and thus, "[i]f fiduciary misconduct results in plan losses, the participating employers will eventually have to pay more of that fixed wage/benefit package in the form of benefit contribution payments to remedy the losses and pay the promised benefits to participant employees," which "unquestionably leads to lower wages and/or other benefits

11

paid to the employees – an obvious, concrete harm." *See* Pl. Fund Opp. at 2-3; *see also* Pl. Fund Opp. at 12-14; Tr. 9-11, 32-33. In support of this argument, Plaintiff points to a single sentence in the Complaint, which alleges: "Had the Benefit Funds not lost money due to the Trustee, Union, and Association breaches, assuming the same level of employer compensation (and subject to prevailing wage requirements on public works), Union members and Class Members would have received either greater cash wages and/or richer benefits." *See* Compl. ¶ 68; *see also* Tr. at 10-11, 32-33.

Plaintiff's bare allegation regarding prevailing wage requirements on public works does not suffice to establish a concrete injury. As an initial matter, the Court is not bound to accept the conclusory allegation that "Union members and Class Members would have received either greater cash wages and/or richer benefits," *see* Compl. ¶ 68, as true. *See Calcano*, 36 F.4th at 75 (noting that a court "need not credit 'a legal conclusion couched as a factual allegation' or a 'naked assertion devoid of further factual enhancement'" and, instead, "must refer to a complaint's 'factual context' to discern whether to accept 'a complaint's conclusory statements'" (first quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), then quoting *Amidax Trading Grp.*, 671 F.3d at 146)). Moreover, the Complaint does not even allege that Plaintiff has been employed on public works projects such that his employers would be subject to prevailing wage requirements, and thus the Complaint fails to connect the alleged mismanagement of the Benefit Funds to an injury that Plaintiff himself has suffered. *See generally* Compl.; *see also Plutzer*, 2022 WL 17086483, at *2 (affirming district court's dismissal of case where plaintiff – a participant in an ERISA plan – relied, for purposes of establishing the injury necessary to demonstrate standing, on an allegation that the plan overpaid in a transaction but where the complaint did not adequately allege that overpayment occurred). And, to the extent that Plaintiff

asserts in his opposition briefing that he would suffer from *future* compensation reductions as a result of prevailing wage requirements, *see* Pl. Fund Opp. at 13-14, such assertion is conclusory and, in any event, not properly before the Court as it is not supported by any allegations in the Complaint. *See Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) ("It is well-settled that a plaintiff cannot amend his complaint by asserting new facts or theories for the first time in opposition to a motion to dismiss." (alterations accepted) (quotation omitted)).[7]

      The arguments made by Plaintiff and the Fund Defendants with respect to standing largely focus on the ERISA claims and the extent to which the Supreme Court's holding in *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020) is applicable to the instant action.  In *Thole*, two retired participants in a defined-benefit plan filed a putative class action in connection with alleged mismanagement of the defined-benefit plan. *See* 140 S. Ct. at 1618.  The Supreme Court held that the named plaintiffs lacked Article III standing to challenge the alleged plan mismanagement because they had received "all of their monthly benefit payments [thus] far" and were "legally and contractually entitled to receive those same monthly payments for the rest of their lives." *See id*. at 1618-19.  The Supreme Court stated that "[o]f decisive importance to th[e] case" was that "the plaintiffs' retirement plan is a defined-benefit plan, not a defined-contribution plan," noting that "[i]n a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *See id*. at 1618.  The Supreme Court explained

---

[7] In light of the allegation that Plaintiff "is currently residing in Lawrenceville, Georgia," Compl. ¶ 3, the Fund Defendants argue that "even if Plaintiff's speculation came true and employers lowered wages to comply with New York State prevailing wage laws, and even if this was a cognizable injury under *Thole*, Plaintiff has not alleged that he would be injured because [he] has not alleged that his employer is one in the New York area that would reduce his wages as theorized." *See* Fund Reply at 2-3.

13

that the plaintiffs had "no concrete stake" in the lawsuit because, win or lose, the plaintiffs "would still receive the exact same monthly benefits that they [were] already slated to receive." *See id*. at 1619. The Supreme Court also highlighted that the plaintiffs' complaint "did not plausibly and clearly claim that the alleged mismanagement of the plan substantially increased the risk that the plan and the employer would fail and be unable to pay the plaintiffs' future pension benefits." *See id*. at 1622. Further, the Supreme Court rejected the plaintiffs' assertion that they had standing to bring suit as representatives of the plan itself, noting that in order to claim the interests of others, the plaintiffs themselves still must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute. *See id*. at 1620.

  Here, *Thole* is instructive, but not dispositive of the issues before the Court. As in *Thole*, Plaintiff does not allege that he was denied benefits owed to him by the Benefit Funds, nor does he claim that the alleged mismanagement of the Benefit Funds substantially increased the risk that the Benefit Funds would be unable to pay to Plaintiff in the future any benefits to which he would otherwise be entitled. *See Thole*, 140 S. Ct. at 1618, 1622; *see also Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*, 858 F. App'x 432, 433-34 (2d Cir. 2021) (affirming dismissal of ERISA claims for lack of standing where "plaintiffs did not allege that they were denied any health benefits promised under the Plan, nor did they allege that the Plan was insolvent or otherwise incapable of continuing to provide covered health benefits" but instead suggested that, but for the alleged misappropriation of funds, they might have received "better health benefits or a cash alternative" and argued that their healthcare benefits were "more akin to a defined contribution than a defined benefit plan" (emphasis omitted) (quotation omitted)). Indeed, the Complaint does not include allegations regarding any benefits that Plaintiff has

14

received from any of the Benefit Funds or that he would receive if he were to prevail in this action. *See generally* Compl. Moreover, the Complaint does not specify how the Benefit Funds are structured or how any benefits are paid out. *See generally* Compl. Plaintiff's citation to various statutory definitions in his description of the Benefit Funds does not provide sufficient information about how the Benefit Funds operate or otherwise demonstrate how Defendants' alleged misconduct gave rise to a concrete injury. *See* Compl. ¶¶ 8-11 (citing 29 U.S.C. § 1002(1)-(3), (37)). In his opposition briefing, Plaintiff argues that Article III standing is not at issue with respect to defined-contribution plans, such as the Annuity Fund, because "losses to plan accounts equate with losses in benefits." *See* Pl. Fund Opp. at 11-12.[8] However, the Court cannot conclude that the alleged mismanagement necessarily affected Plaintiff's benefits with respect to the Annuity Fund based solely on allegations that it is a "multiemployer defined contribution profit sharing plan." *See* Compl. ¶¶ 44, 52; *Calcano*, 36 F.4th at 75; *see also Hoeffner v. D'Amato*, 605 F. Supp. 3d 467, 477 (E.D.N.Y. 2022) (holding that named plaintiffs had established standing where plaintiffs credibly alleged – and supported with an affidavit – that welfare fund's benefits were not fixed and that their wages and benefits provided by the fund fluctuated based on the fund's overall assets), *reconsideration denied*, 664 F. Supp. 3d 269 (E.D.N.Y. 2023).[9]

---

[8] Plaintiff argues that *Thole*'s holding regarding standing and harm applies only to defined benefit plans, not defined contribution plans, and "[t]hus, at the very least, *Thole* has no bearing on Plaintiff's standing to bring his ERISA claims relating to the Defendant Annuity Fund (and the Association and Trustees of the Annuity Fund)." *See* Pl. Fund Opp. at 1-2. Plaintiff does not appear to argue that the Welfare Fund, the Pension Fund, or the Apprenticeship Fund are defined contribution plans.

[9] Plaintiff makes various other unavailing arguments with respect to *Thole*. *See* Pl. Fund Opp. at 2, 14-15 (arguing that *Thole*'s holding is limited to single-employer corporate plans); Pl. Fund Opp. at 2, 12-14 (arguing that *Thole*'s holding is inapplicable in the "publicly-funded construction context").

Plaintiff's Complaint fails to establish any concrete injury.[10]  Accordingly, Plaintiff has failed to establish that he has standing to bring any of his claims as against any Defendant.  *See TransUnion*, 594 U.S. at 431.[11]  The Court therefore dismisses the Complaint in its entirety, without prejudice.  *See, e.g.*, *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017) (noting that "where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice" (quotation omitted)).

## CONCLUSION

For the reasons set forth above, the Fund Defendants' Motion to Dismiss, ECF No. 54, is GRANTED and the Complaint, ECF No. 1, is DISMISSED in its entirety, without prejudice.  Such dismissal is without leave to amend given that Plaintiff was apprised of the pleading defects in Plaintiff's Complaint by way of Defendants' requests for a pre-motion conference, *see* ECF Nos. 36, 37, 40; that Plaintiff did not amend in light of the aforementioned filings, *see generally* docket, despite being afforded the opportunity to do so, *see* July 12, 2022 Order; that Plaintiff was further apprised of the pleading defects in Plaintiff's Complaint by way of the motions to dismiss, *see* ECF Nos. 54, 57; that Plaintiff thereafter stated, in his letter dated June 20, 2023, that Plaintiff did not seek leave to amend, *see* ECF No. 61; that Plaintiff stated during

---

[10]  Although the Complaint contains various conclusory allegations of harm in addition to the allegations noted above, such allegations also fail to establish concrete injury. *See, e.g.*, Compl. ¶¶ 108, 119, 123.

[11]  Plaintiff cannot rely on any injuries of unidentified members of the class he purports to represent in order to establish Article III standing.  *See Central*, 433 F.3d at 199 (collecting cases).  Further, because Plaintiff has failed to establish that he suffered any injury in fact, Plaintiff lacks standing to bring his ERISA claims on behalf of the Benefit Funds pursuant to 29 U.S.C. § 1132(a)(2).  *See* Compl. ¶ 15 n.4 (noting that "Plaintiff alternately seeks to bring this case in a non-class capacity on behalf of the Benefit Funds under 29 U.S.C. § 502(a)(2)" – an apparent reference to Section 502(a)(2) of ERISA, codified at 29 U.S.C. § 1132(a)(2));  *Thole*, 140 S. Ct. at 1620 ("[I]n order to claim 'the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving' them 'a sufficiently concrete interest in the outcome of the issue in dispute.'" (quoting *Hollingsworth*, 570 U.S. at 708)).

the July 25, 2023 oral argument in connection with the instant motions – during which the Court raised the issue of standing – that Plaintiff did not believe amendment was needed and that Plaintiff did not believe there was a reason to amend, *see* Tr. at 14, 37-38; and that there is no indication that Plaintiff could provide additional allegations that might cure the defects set forth above and lead to a different result – indeed, Plaintiff has proffered no such additional allegations. *See Gallop v. Cheney*, 642 F.3d 364, 369-70 (2d Cir. 2011); *see also Taveras v. UBS AG*, 612 F. App'x 27, 29-30 (2d Cir. 2015).[12]

The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

                                                                        */s/ Diane Gujarati*
                                                                        DIANE GUJARATI
                                                                        United States District Judge

Dated: February 28, 2024
        Brooklyn, New York

---

[12] Although the Court lacks subject matter jurisdiction and therefore does not reach the merits of Plaintiff's claims or consider the motions to dismiss to the extent that they argue for dismissal under Rule 12(b)(6), the Court notes that the moving Defendants raise a variety of persuasive arguments as to why Plaintiff's claims would fail on the merits. *See, e.g.*, Fund Br. at 13-34; Union Br. at 8-25.

The Union Defendants' request for attorneys' fees and costs, *see* Union Br. at 25-27; Union Reply at 19-20, is denied without prejudice.